UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GRETCHEN ANN CACCIAGUIDI,<br><br>              Plaintiff,<br><br>   v.<br><br>BRENT REINKE; OLIVIA CRAVEN; BRUCE WELLS-MOORE; JODI GRUENDLER; DONALD EASTEPPE; and DOES 1-50; individually and in their official capacities;<br><br>              Defendants. | Case No. 4:09-cv-00343-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

      Pending before the Court is a Motion for Summary Judgment filed by the Idaho Department of Correction (IDOC) Defendants. (Dkt. 57.) Plaintiff Gretchen Cacciaguidi (Plaintiff) has filed her Response (Dkt. 63), and Defendants have filed a Reply. (Dkt. 64.) The Motion is now fully briefed and ready for disposition.

      Having fully reviewed the record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs and record and that the decisional process would not be significantly aided by oral argument. Therefore, in the interest of avoiding further delay, the Court shall decide this matter on the written motions, briefs and record without oral argument. D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court

**MEMORANDUM DECISION AND ORDER - 1**

enters the following Order.

## MOTION TO WITHDRAW AS COUNSEL

Pending before the Court is an Unopposed Motion to Withdraw as Limited-Purpose Stand-By Counsel for Plaintiff. (Dkt. 70.) Good cause appearing, the Motion will be granted, and both stand-by counsel will be permitted to withdraw. The Court recognizes the work of counsel in this case and thanks them for their willingness to give pro bono service to people in need.

## BACKGROUND

Plaintiff recently completed a criminal sentence in the custody of the Idaho Department of Corrections ("IDOC").[1] She brings claims arising from her incarceration in 2007. At that time, Plaintiff was required by the Idaho Commission of Pardons and Parole to participate in the prison's Therapeutic Community Program (TCP) for rehabilitative purposes prior to parole. On May 18, 2007, Plaintiff was granted a tentative open parole date conditioned upon completion of the program. However, Plaintiff did not complete the TCP. Rather, on October 2, 2007, she was removed on allegations of being disruptive. As a result, her tentative parole date was revoked. Plaintiff was informed that she could apply to return to the TCP at a later date.

Plaintiff alleges that she was unable to complete the TCP because particular

---

[1] See https://www.accessidaho.org/public/corr/offender/search.html.

**MEMORANDUM DECISION AND ORDER - 2**

aspects of the program violated her constitutional rights. She argues that when she tried to voice her concerns, she was punished and removed from the program. She alleges violations of 42 U.S.C. § 1983, 42 U.S.C. § 1985, and RLUIPA.[2] She requests as relief, in pertinent part: "an injunction against the Defendants in their official capacities to cease and desist operating a therapeutic community because it is dishonest and illegal"; an order expunging Plaintiff's record in the TC because it is false and illegally obtained"; "a judgment in favor for damages against all the Defendants in an amount sufficient to compensate Plaintiff for her pain and mental anguish suffered due to illegal conduct"; punitive damages; and attorney fees and costs. (Amended Complaint, Dkt. 10-1 p. 22.)

In this action, Plaintiff sues Brent Reinke, Olivia Craven, Bruce Wells-Moore, Jodi Gruendler, Donald Easteppe, and Does 1-50, in their personal and official capacities. In a previous state habeas corpus action, Plaintiff sued the State of Idaho and the Department of Correction for injunctive relief.

By Order dated June 13, 2011 (Dkt. 56), Plaintiff was permitted to proceed on her First Amended Complaint. (Dkt. 10). The Second Amended Complaint was withdrawn and is not at issue (Dkt. 43).

---

[2] Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc.

**MEMORANDUM DECISION AND ORDER - 3**

## PLAINTIFF'S RELEASE AND
## PLAINTIFF'S RLUIPA CLAIMS

Plaintiff's release, which occurred after Defendants filed their Motion for Summary Judgment, renders her civil rights claims for an injunction against the Defendants in their official capacities to cease operating a therapeutic community moot. *See Wiggins v. Rushen*, 760 F.2d 1009, 1011 (9th Cir. 1985). *Dilley v. Gunn*, 64 F.3d 1365, 1369 (9th Cir. 1995). Plaintiff's RLUIPA claims for injunctive relief are also moot. Additionally, because RLUIPA does not provide for damages against state defendants in their *official* capacities, that claim will also be dismissed. *See Sossamon v. Texas*, 131 S.Ct. 1651, 1663 (2011).

Many United States Courts of Appeal have concluded that RLUIPA does not create a cause of action for damages against officials in their *individual* capacities, although the United States Court of Appeals for the Ninth Circuit has not yet addressed the issue. *See Rendelman v. Rouse*, 569 F.3d 182, 187–89 (4th Cir. 2009); *Nelson v. Miller*, 570 F.3d 868, 886–89 (7th Cir. 2009); *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 327–29 (5th Cir. 2009); *Smith v. Allen*, 502 F.3d 1255, 1271–75 (11th Cir. 2007). In so concluding, the Courts reasoned that Congress enacted RLUIPA pursuant to the Spending Clause and did not indicate with sufficient clarity an intent to condition the states' receipt of federal funds on the creation of an individual capacity action for damages; moreover, a contrary reading of the statute would raise serious constitutional concerns about the extent of Congress's authority under the Spending Clause. *See*

**MEMORANDUM DECISION AND ORDER - 4**

*Rendelman*, 569 F.3d at 187–89; *Nelson*, 570 F.3d at 887–89; *Sossamon*, 560 F.3d at 327–29; *Smith*, 502 F.3d at 1271–75.

Furthermore, several District Courts in the Ninth Circuit have concluded that RLUIPA does not create a damage claim against officials in their individual capacities. *See, e.g., Rupe v. Cate*, 688 F.Supp.2d 1035, 1044–46 (E.D. Cal. 2010); *Hundal v. Lackner*, 2009 WL 2985448, *4 (C.D. Cal., September 15, 2009). The Court adopts the reasoning of the Fourth, Fifth, Seventh, and Eleventh Circuits and concludes that plaintiff cannot assert an RLUIPA claim for damages against defendants in their individual capacities. Therefore, Plaintiff's RLUIPA claims for damages against defendants in their individual capacities will be dismissed.

Plaintiff's claim that her prison records be expunged is still viable only if she shows that she suffers continuing collateral consequences after release. *See Kerr v. Farrey*, 95 F.3d 472, 476 (7th Cir. 1996). In *Spencer v. Kemna*, 523 U.S. 1, 7 (1998), the United States Supreme Court determined in a habeas corpus case that, once the convict's sentence has expired, some concrete and continuing injury other than the now-ended incarceration or parole–some "collateral consequence" of the conviction–must exist if a suit is to be maintained. Following *Spencer*, the United States Court of Appeals for the Ninth Circuit decided that the presumption of collateral consequences does not apply to prison disciplinary proceedings. *Wilson v. Terhune*, 319 F.3d 477, 481 (9th Cir. 2003). The Ninth Circuit Court rejected Petitioner's argument that the existing prison disciplinary records might contribute to the possibility of a harsher sentence in any future

**MEMORANDUM DECISION AND ORDER - 5**

criminal proceedings as a theory to prevent mootness because "[t]his type of collateral consequence was rejected in *Spencer*, in which the Court stated that the habeas petitioner is expected to prevent such a possibility by avoiding violating the law." *Wilson*, 319 F.3d at 481 (citing *Spencer*, 523 U.S. at 13-15). Accordingly, because Petitioner has completed her sentence and has been released from prison, her injunctive relief claims for expungement of prison records are moot.

However, release does not moot a claim for monetary damages. *McKinnon v. Talladega County, Ala.*, 745 F.2d 1360, 1362 (11th Cir. 1984), because a claim for monetary damages "looks back in time and is intended to redress a past injury." *Adler v. Duval County Sch. Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997). The Court, therefore, will determine the Motion for Summary Judgment on Plaintiff's remaining claims for damages, only.

## MOTION FOR SUMMARY JUDGMENT

### 1.   Standard of Law Governing Summary Judgment

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant

**MEMORANDUM DECISION AND ORDER - 6**

unwarranted consumption of public and private resources." *Id*. at 327.

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The requirement is that there be no genuine dispute as to any *material* fact. "Material facts are those that may affect the outcome of the case." *See id.* at 248. The moving party is entitled to summary judgment if that party shows that each material issue of fact cannot be disputed. To show that the material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that the materials cited do not establish the presence of a genuine dispute, or that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A)&(B); *see T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex*, 477 U.S. at 322). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3).

Material used to support or dispute a fact must be "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Affidavits or declarations submitted in support of or opposition to a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. All inferences which can be drawn from the evidence

**MEMORANDUM DECISION AND ORDER - 7**

must be drawn in a light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 630-31 (internal citation omitted). If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. Rule 56(e)(3) authorizes the Court to grant summary judgment for the moving party "if the motion and supporting materials– including the facts considered undisputed–show that the movant is entitled to it."

Plaintiff brings her claims under 42 U.S.C. § 1983,[3] the civil rights statute. To have a claim under § 1983, a plaintiff must show the existence of four elements: "(1) a violation of rights protected by the Constitution or created by federal statute (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law."

---

[3] While Plaintiff alleges that her claims also support a § 1985 claim, she is misguided on the law, and such claims are dismissed for failure to state a claim. Section 1985 governs conspiracies to interfere with civil rights. The only pertinent portions of the statute for her claims are Section 1985(2) and (3). In order to state a claim under either Section 1985(2) or (3), Plaintiff must allege a racial or class-based discriminatory animus behind the conspirators' actions. *See Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989); *see also A & A Concrete, Inc. v. White Mountain Apache Tribe*, 676 F.2d 1330, 1333 (9th Cir. 1982) (claims under sections 1985(2) and 1985(3) require the element of class-based animus). Plaintiff has failed to allege that he is a member of a racial group or other protected class against whom a conspiracy was perpetrated. Inmates are not a suspect or protected class.

**MEMORANDUM DECISION AND ORDER - 8**

*Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).[4] Section 1983 is "'not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

2. **Standard of Law Governing Claim Preclusion and Issue Preclusion**

   A. *Applicability Between State and Federal Courts*

   Claim preclusion and issue preclusion prevent parties and their privies from bringing or having to defend a claim or re-litigate an issue arising from the transaction that gave rise to the first suit. Both claim and issue preclusion are affirmative defenses that may be asserted in federal courts, regardless of where the original facts were tried, including, as is the case here, state courts. *See* 28 U.S.C. § 1738 (federal courts must afford full faith and credit to state judicial proceedings); *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75 (1984) (federal courts hearing § 1983 actions must give *res judicata* preclusive effect to state court judgments); *Allen v. McCurry*, 449 U.S. 90 (1980) (federal courts hearing § 1983 actions must give *collateral estoppel* preclusive effect to state court judgments). To determine whether a state court case should have preclusive effect on a federal action, federal courts apply the state's rules governing preclusion. *See*

---

[4] 42 U.S.C. § 1983, provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, . . . subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

**MEMORANDUM DECISION AND ORDER - 9**

*Migra*, 465 U.S. at 83-85.

    **B.**   *Claim Preclusion*

Idaho law provides that the party asserting claim preclusion as an affirmative defense bears the burden of establishing all of its essential elements by a preponderance of the evidence. *Foster v. City of St. Anthony*, 841 P.2d 413, 420 (Idaho 1992). For claim preclusion to bar a subsequent action there are three requirements: (1) the same parties or privies; (2) the same claim; and (3) a final judgment. *Ticor Title Co. v. Stanion*, 157 P.3d 613 (Idaho 2007) (citing *Hindmarsh v. Mock*, 57 P.3d 803, 805 (Idaho 2002)); *Farmers Nat'l Bank v. Shirey*, 878 P.2d 762, 767 (1994)).

Idaho has adopted the "transactional" approach to claim preclusion, which means that "[i]n an action between the same parties upon the same claim or demand, the former adjudication concludes parties and privies not only as to every matter offered and received to sustain or defeat the claim but also as to every matter which might and should have been litigated in the first suit." *Weldon v. Bonner County Tax Coalition*, 855 P.2d 868, 872 (Idaho 1993) (relying on *Diamond v. Farmers Group*, 804 P.2d 319, 323 (1990)).

Therefore, the first question at hand is whether Plaintiff's remaining claims for damages are barred by claim preclusion. This question is very simply answered by looking at the nature of the cause of action previously brought in the state court: a statutory habeas corpus petition. Because the state-law habeas corpus cause of action does not allow a claim for damages, *see* Idaho Code § 19-4209 to 4212, the Court concludes as

**MEMORANDUM DECISION AND ORDER - 10**

a matter of law that there was no fair opportunity to litigate the damages claims in the previous state court action. Thus, Plaintiff's damages claims are not barred by claim preclusion. *Hiser v. Franklin*, 94 F.3d 1287, 1289 (9th Cir. 1996) (class action context); *Davis v. Halpern*, 813 F.2d 37, 39 (2d Cir. 1987); *Karamoko v. New York City Housing Authority*, 170 F.Supp.2d 372, 377 (S.D.N.Y. 2001).

### C.  *Issue Preclusion*

To determine whether the doctrine of issue preclusion is applicable, the court examines: (1) whether the party against whom the prior decision is asserted had a full and fair opportunity to litigate the issue in the earlier case; (2) whether the issue decided in the prior case was identical with the one presented in the subsequent litigation; (3) whether the issue was actually decided in the prior litigation; (4) whether there was a final judgment on the merits; and (5) whether the party against whom the prior decision is asserted is the same party or in privity with the same party in the prior case. *Anderson v. City of Pocatello*, 112 Idaho 176, 183-84, 731 P.2d 171, 178-79 (1986) (relying on *Bernhard v. Bank of America Nat. Trust & Savings Ass'n*, 19 Cal.2d 807, 122 P.2d 892, 895 (1942)).

Idaho has rejected a "mutuality" requirement, meaning that a party who was not bound by a previous action is not precluded from asserting issue preclusion. *Anderson v. City of Pocatello*, 731 P.2d 171, 178-79 (1987). In *Anderson*, the Idaho Supreme Court explained: "To permit relitigation of an issue that was fully and fairly litigated and lost in a prior action undermines the worthwhile purposes of the collateral estoppel rule without

**MEMORANDUM DECISION AND ORDER - 11**

serving any other recognizable good purpose." The *Anderson* Court further relied on *Bernhard v. Bank of America Nat. Trust & Savings Ass'n*, 19 Cal.2d 807, 122 P.2d 892, 895 (1942):

> The criteria for determining who may assert a plea of res judicata differ fundamentally from the criteria for determining against whom a plea of res judicata may be asserted. The requirements of due process of law forbid the assertion of a plea of res judicata against a party unless he was bound by the earlier litigation in which the matter was decided. He is bound by that litigation only if he has been a party thereto or in privity with a party thereto. *Ibid.* There is no compelling reason, however, for requiring that the party asserting the plea of res judicata must have been a party, or in privity with a party, to the earlier litigation.

122 P.2d at 894 (internal citations omitted).

### Factors (1), (2) and (3): Full and Fair Opportunity to Litigate, Identity of Issues, and Actually Decided by State Courts

Because Defendants are seeking to assert an issue preclusion defense against Plaintiff in this action, the Court asks whether Plaintiff had a fair opportunity to litigate the issues in state court, whether the issues are identical, and whether the issues were actually decided by the state courts. Plaintiff brought a state habeas corpus matter in state magistrate court, which was dismissed. Plaintiff appealed to the state district court, which affirmed dismissal. She then appealed again, and the Idaho Court of Appeals rendered a detailed decision affirming dismissal. (Dkt. 57-4.)

Idaho courts examine the specific facts of each claim to determine if the issues presented were "necessarily or actually decided." *Rajspic v. Nationwide Mut. Ins. Co.*, 104 Idaho 662, 665 (1983). The Idaho Court of Appeals addressed the following issues

**MEMORANDUM DECISION AND ORDER - 12**

which are essential to Plaintiff being able to prove her First Amendment free speech claim, free exercise claim, establishment clause claim, and her RLUIPA claim.[5] The Idaho Court of Appeals determined that the TCP "pull-up" system did not require an inmate to accept whatever was said or done to her without any way to defend herself against false allegations. Rather, the TCP handbook specifically showed how to defend oneself in the face of wrongful allegations. (Dkt. 57-4, p. 7.) In addition, Plaintiff submitted pull-ups and participated in mediation in the TCP prior to her dismissal from the program, countering her contention that he was unable to speak in defense of herself. (*Id.*)

The Idaho Court of Appeals further determined that the TCP's alleged prohibition against saying "God" at the TCP meeting did not substantially interfere with Plaintiff's religious exercise, and that it was a mere inconvenience. Plaintiff did not show that not

---

[5] As noted above, the RLUIPA claims does not provide for damages, and, thus, it is moot. The Court includes it in the discussion here, because in *Hyde v. Fisher*, 152 P.3d 653 (Idaho Ct. App. 2007), the Court rejected the State's argument that RLUIPA claims could not be heard in, or in conjunction with, state habeas corpus claims brought on constitutional grounds, where both arise from the same set of facts. The same appears to be true of the issues included in the Establishment Clause claims. In *Hyde v. Fisher*, the Court said:

> The state argues that the dismissal of Hyde's RLUIPA and FERPA claims was proper under an alternative basis—that habeas corpus may be used only to present claims of constitutional violations in conditions of confinement. See I.C. § 19–4203(2). On the particular procedural history of this case, we reject this rationale. The state's position that the statutory claims may not properly be asserted in a habeas corpus proceeding was not the basis for the district court's decision dismissing the RLUIPA and the FERPA claims. Rather, they were dismissed for Hyde's failure to pay a bond that he apparently could not afford. If the asserted procedural impropriety of presenting the statutory claims within a habeas corpus action had been the basis for the dismissal order, Hyde could have reasserted those claims in a separate civil action, and they could have been consolidated for trial with the constitutional habeas corpus claims.

*Id*. at 658.

**MEMORANDUM DECISION AND ORDER - 13**

being able to say "God" in meetings had anything more than an incidental effect on her religious worship. (*Id.*, p. 8.)

Likewise, the issues underlying Plaintiff's Fifth and Fourteenth Amendment due process claims were presented to and decided by the state courts. The Idaho Court of Appeals determined that Plaintiff's allegations that the TC rules and procedures violated her due process rights because they were unfair and did not allow her to refute the charges against her were not borne out by the record, as discussed forth above. (*Id.*, p. 10.) The Idaho Court of Appeals found that the record reflected that inmates were permitted to submit pull-ups to bring to staff's attention the inappropriate use of pull-ups, such as for false allegations, and mediation was used to address inmates concerns. (*Id.*, p. 10.)

The Idaho Court of Appeals also determined that the record indicated that the requisite due process procedures were followed, and that "some evidence" supported the prison disciplinary action against Plaintiff, greatly detailed in the Idaho Court of Appeals's opinion. (*Id.*, p. 11, 11 n.3.) The Idaho Court of Appeals also identified the issue that Plaintiff was challenging the "right" to rehabilitation, which is a nonexistent right. (*Id.*, p. 11.)

In addition, the state court rejected Plaintiff's other theories, all arising from the same set of facts. This includes Plaintiff's claims relating to the right against self-incrimination, double jeopardy, bills of attainder, ex post facto, right to confront witnesses, and equal protection. (*Id.*, p. 12.)

In summary, Plaintiff was given opportunity to litigate her claims before three

**MEMORANDUM DECISION AND ORDER - 14**

Idaho courts: the magistrate court, district court, and court of appeals. She has made no persuasive argument that she was did not have a fair chance to bring her facts, issues, and claims before these courts. These issues are identical to the issues brought before this Court in her current lawsuit. Even though two religious claims were added in federal court, nevertheless, the *underlying issues* in all of the claims arose from the exact set of facts considered by the three Idaho state courts. The issues were presented to, argued, and actually decided by, the state courts.

Factors (4) and (5) Final Judgment and Privity of Parties

The state courts dismissed Plaintiff's claims with prejudice for failure to state a claim upon which relief can be granted. A dismissal for failure to state a claim is a judgment on the merits to which res judicata applies. *Federated Dep't Stores v. Moitie*, 452 U.S. 394, 399 n.3 (1981). *See also Classic Auto Refinishing, Inc. v. Marino*, 181 F.3d 1142, 1144 (9th Cir. 1999) ("There can be little doubt that a dismissal with prejudice bars any further action between the parties on the issues subtended by the case.").

The final factor is whether the party against whom issue preclusion is sought to be applied is the same party or privy of a party to the prior adjudication. Plaintiff is the same party in both suits. Therefore, this factor is met.

**D.**     ***Plaintiff's Arguments and Summary of Res Judicata Discussion***

In her response, Plaintiff maintains that there are genuine issues of disputed fact preventing dismissal. However, Plaintiff focuses on unsubstantiated allegations of corruption and collusion, rather than pointing to disputed material facts. Plaintiff again

**MEMORANDUM DECISION AND ORDER - 15**

argues for class certification and re-alleges that the TCP is a criminal enterprise.

Further, Plaintiff argues that the habeas case was wrongly decided because the Idaho courts were not impartial. The doctrine of *Rooker-Feldman* prevents Plaintiff from challenging the alleged "wrongfulness" of the state court decision in this Court. Therefore, this argument is unavailing.

A federal district court has no jurisdiction "over challenges to state-court decisions, in particular cases arising out of judicial proceedings, even if those challenges allege that the state court's action was unconstitutional." *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983); *see also Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). "This rule applies even though . . . the challenge is anchored to alleged deprivations of federally protected due process and equal protection rights." *Id.* at 486 (internal citation omitted). Rather, under 28 U.S.C. § 1257, "the proper court in which to obtain such review is the United States Supreme Court." *Worldwide Church of God v. McNair,* 805 F.2d 888, 890 (9th Cir. 1986). This rule of law is known as the "*Rooker-Feldman* doctrine."

The *Rooker-Feldman* doctrine "bars federal courts from exercising subject matter jurisdiction over a proceeding in "which a party losing in state court seeks 'what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights.'" *Doe v. Mann*, 415 F.3d 1038, 1041 (9th Cir. 2005) (citing *Johnson v. De Grandy*, 512, U.S. 997, 1005-06 (1994)). The doctrine bars not only issues heard in the

**MEMORANDUM DECISION AND ORDER - 16**

state court action, but "any issue raised in the suit that is 'inextricably intertwined' with an issue resolved by the state court in its judicial decision." *Doe v. Mann*, 415 F.3d at 1042 (citing *Noel v. Hall*, 341 F.3d 1148, 1158 (9th Cir. 2003)). Clearly, Plaintiff's argument that the state court wrongly decided the case is barred by *Rooker-Feldman*.

Another argument is alleged judicial bias of the state courts. Any question of judicial bias should have been raised in the state habeas action and pursued through appeal. Her allegation of bias arises from the fact that her state habeas case was dismissed. She argues that the Idaho judiciary cannot be impartial with regard to the TCP, because the courts of the Idaho judiciary include those that regularly recommend that an incarcerated defendant participate in the TCP to facilitate rehabilitation. If that were the case, then the state courts would never have jurisdiction to review their own state's prison programs. The federal court is a court of limited jurisdiction. State courts are vested with concurrent authority to review federal constitutional violations. Therefore, no legal basis for Plaintiff's argument exists.

Additionally, Plaintiff reasons that, unlike her habeas case, the instant case is aimed at becoming a class action, which she could not have pursued through a habeas claim. The Court has previously addressed and denied Plaintiff's request for class action status and, therefore, this argument is moot.

## CONCLUSION

Simply put, Plaintiff has already pursued a cause of action under this set of facts, and, after a full and fair opportunity to argue her issues, was denied any relief. The

**MEMORANDUM DECISION AND ORDER - 17**

primary alleged rights regarding the prison's TCP program, and the alleged harm is the same. The parties involved in Plaintiff's habeas action are substantially the same, as her complaint is directed toward the TCP program. Finally, there is no indication that the other decisions were anything other than a judgment on the merits. This Court is required to give preclusive effect to the prior state court decisions on the same issues. Once preclusion effect is given to these issues, essential elements of each of Plaintiff's are defeated. Hence, summary judgment in favor of Defendants is warranted, and Plaintiff's Complaint will be dismissed with prejudice.

## ORDER

IT IS ORDERED:

1. Plaintiff's claims for injunctive relief are DISMISSED as MOOT.
2. Defendant's Motion for Summary Judgment (Dkt. 57) is DENIED on grounds of claim preclusion, but GRANTED on grounds of issue preclusion.
3. Plaintiff's entire case is DISMISSED with prejudice.
4. Plaintiff's stand-by counsels' Motion to Withdraw as Attorneys of Record (Dkt. 70) is GRANTED.

DATED: **March 14, 2012**

B. LYNN WINMILL
Chief U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 18